# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

M.A. MORTENSON CO.,

Plaintiff,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 10-3075 (MJD/AJB)

VIRGINIA SURETY CO., INC.,

Defendant.

Myriam Pierre Warren and Rikke A. Dierssen-Morice, Faegre & Benson LLP, Counsel for Plaintiff.

Peter M. Waldeck and Timothy W. Waldeck, Waldeck & Lind, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on M.A. Mortenson's Motion for Partial Summary Judgment on Breach of the Duty to Defend by Virginia Surety Company [Docket No. 20] and on Virginia Surety's Motion for Summary Judgment Against M.A. Mortenson [Docket No. 28].  The Court heard oral argument on July 22, 2011.  For the reasons that follow, the Court grants M.A.

Mortenson's Motion for Partial Summary Judgment and denies Virginia Surety's Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff M.A. Mortenson Company ("Mortenson") is a Minnesota construction company.  Defendant Virginia Surety Company, Inc. ("Virginia Surety") is an insurance corporation with its principle place of business in Illinois.

Mortenson was the general contractor on a Kings Point, New York, construction project for the U.S. Army Corps of Engineers (the "Project"). Harbour Mechanical Corporation ("Harbour") was a subcontractor on the Project.  Mortenson's Subcontract with Harbour required Harbour and all other subcontractors to comply with Mortenson's safety measures.  Those safety measures included minimal requirements for clothing (including long pants) to be worn on construction sites as required by the U.S. Army Corps of Engineers Safety and Health Requirements Manual (EM 385).

The Harbour Subcontract also provided that Harbour needed to procure, maintain, and pay for its own insurance, "as will protect against claims for

bodily injury or death . . . which may arise out of operations by Subcontractor or by any of its subcontractors or by anyone employed by them, or by anyone for whose acts any of them may be liable." (Harbour Subcontract ¶16.1.) Harbour was also required to name Mortenson as an additional insured for liability arising out of Harbour's work. (Id. ¶ 16.4) Mortenson was named as an additional insured on Harbour's primary commercial general liability coverage issued by Virginia Surety under policy number 2CG0000050129603, with an effective term of March 18, 2006, through March 18, 2007 (the "Policy").

Harbour subcontracted with WHM Plumbing & Heating Contractors, Inc. ("WHM") to perform plumbing work on the Project.

On October 18, 2007, Charles Lanigan, a WHM employee, filed a multi-million lawsuit against Mortenson in New York state court, which was then removed to the U.S. District Court for the Eastern District of New York (the "Lanigan Suit"). On February 1, 2008, Lanigan amended the lawsuit to add WHM as an additional defendant.

The original Lanigan Complaint asserted: Count One: Violation of New York Executive Law § 296; Count Two: Intentional Infliction of Emotional Distress; Count Three: Discrimination under New York City Laws, and Count

Four: Negligence.  All claims were based on Lanigan's assertion that he sustained

personal injuries because his "Employer General Contractor . . . Mortenson" did

not allow him to wear shorts on July 27, 2006, while working on the Project.

(Lanigan Compl. ¶¶ 1, 8-10.)

The Amended Lanigan Complaint asserted Count One: Violation of New

York Executive Law § 296; Count Two: Intentional Infliction of Emotional

Distress; Count Three: Negligence, and Count Four: Breach of Employment

Agreement.  It based its claims on Lanigan's assertion that he sustained personal

injuries because his "employers [] general contractor . . . Mortenson . . . and []

subcontractor defendant W.H.M. . . . refused him the reasonable accommodation

of wearing short pants."  (Am. Lanigan Compl. ¶ 1.)  The factual allegations in

both Lanigan complaints are the same as to Mortenson.

Lanigan claimed that upon starting work at the Project, on July 25, 2006, he

went to work wearing shorts and provided Mortenson with "a written request[]

from his doctor that he be allowed to wear shorts on his construction jobs in

warm weather."  (Lanigan Compl. ¶¶ 6-7; Am. Lanigan Compl. ¶¶ 4-5.)

Although not included in the Lanigan complaints, Virginia Surety has submitted

the doctor's letter, which stated: "Due to his medical condition known as

4

Raynaud[']s Syndrome which causes excessive sweating, Charles Lanigan has been experiencing excessive sweating of the legs and chest.  It is recommended and necessary for him to wear shorts on the job site allowing him free movement. It should only be necessary for him to wear shorts when the weather is hot and humid."

According to the Lanigan complaints, Lanigan was allowed to wear shorts on July 25.  On July 26, he worked in shorts without incident.  The evening of July 26, Mortenson's foreman called Lanigan and "demanded that he wear long pants to work."  (Lanigan Compl. ¶ 8; Am. Lanigan Compl. ¶ 6.)  Lanigan "explained that this would put him in jeopardy of medical damage," but Mortenson would not allow him to wear shorts.  (Lanigan Compl. ¶ 9; Am. Lanigan Compl. ¶ 7.)

Lanigan asserted that, because he was required to wear pants on July 27, he became severely dehydrated, collapsed by 10 a.m., and had to be taken to the hospital to receive an IV.  Lanigan further alleged that the dehydration incident caused a kidney stone and a concussion when he later fell at a different work site.  He asserted that he suffered mental and physical pain and was unable to work.

On November 21, 2007, Mortenson tendered the defense of the Lanigan Suit to Virginia Surety under the additional insured endorsement.  As part of the tender, Mortenson provided Virginia Surety with copies of the Lanigan Complaint, the Certificate of Insurance, the Harbour Subcontract, and the applicable U .S. Army Corps of Engineers Safety and Health Requirements.

On January 2, 2008, Virginia Surety, through its claim representative, Gallagher Bassett Services, Inc. ("Gallagher"), sent Mortenson a letter entitled "Reservation of Rights Letter" ("ROR Letter").  The letter stated that "Virginia Surety will investigate this matter under a full reservation of rights to disclaim coverage."  (ROR Letter at 1.)  The letter then "direct[ed] [Mortenson's] attention" to various block quotations from the Policy.  (Id. at 2-4.)  The ROR Letter stated how Counts One through Three (the non-negligence counts) of the original Complaint might not be covered under the Policy.  (Id. at 4.)  The ROR Letter also listed other exclusions that Virginia Surety alleged to apply by block quoting large portions of the Policy listing various exclusions.  (Id. at 4-6.)  Virginia Surety "reserve[d] the right to deny coverage to Mortenson on the basis of late notice to the extent that [Virginia Surety's] investigation reveals that Mortenson was aware of the occurrence, yet failed to report same."  (Id. at 6.)

Virginia Surety listed multiple rights that it reserved including that it reserved its right to "withdraw from the defense of this action upon the development of information which establishes that there is no duty to defend or provide coverage, but Virginia Surety will not withdraw without giving you any legally required notice."  (Id. at 7.)   It also "reserve[d] the right to deny coverage because of any coverage defense or facts that may later come to its attention." (Id.)  The ROR Letter never stated that Virginia Surety denied Mortenson's claim.

On January 23, 2008, Mortenson's counsel responded to the ROR Letter, disputing the bases alleged for Virginia Surety's reservation of rights and stating:

> Now that Virginia Surety has issued its Reservation of Rights Letter, Mortenson expects that Virginia Surety will immediately begin paying defense cost invoices that are being incurred in the defense of the Lanigan suit.  An insurer's reservation of rights is an acknowledgement that the insurer owes a duty to defend, subject to the reservations stated.  Accordingly, Mortenson expects that Virginia Surety will commence payment of all defense cost invoices being incurred in the Lanigan suit beginning from the date of Mortenson's tender, November 21, 2007.  Mortenson will begin to assemble and submit defense cost invoices to your attention from this point forward.  Invoices will be directed to your attention.  We expect that these invoices will be paid within 30 days of receipt.  If invoices should be directed to another Virginia Surety representative, please advise us accordingly.

Mortenson then sent defense invoices to Gallagher, but Virginia Surety made no payments.  Neither Gallagher nor Virginia Surety would provide

Mortenson with any substantive communications explaining the refusal to pay

defense costs, despite Mortenson's requests in writing and verbally asking for

payment or an explanation of why payments were not being made.  Virginia

Surety never informed Mortenson that it was not defending the Lanigan Suit or

that it was withdrawing from the defense.  Throughout the Lanigan Suit,

Virginia Surety refused to return Mortenson's calls and letters and, when

Mortenson finally reached the head of Gallagher, he told it that its claims

representative had been fired but "all would be well."  (Second Twesme Aff.  ¶

5.)  After that point, Mortenson had conference calls regarding the status of

attorneys' fees in September 2009, but, afterwards, Gallagher and Virginia Surety

again failed to respond to Mortenson's correspondence.  In June 2010, Mortenson

informed Virginia Surety that it would hire counsel to initiate this action, and

Virginia Surety failed to respond.

Virginia Surety claims that it never accepted Mortenson's tender of

defense.

On July 21, 2010, Mortenson's counsel faxed and emailed Virginia Surety

the Summons, Complaint, and the fact that mediation would occur in the

Lanigan Suit the following day.  Virginia Surety did not respond.  Having

received no response, Mortenson agreed in principle to settle the Lanigan Suit for

$43,000, $41,000 of which was to be paid by Mortenson.  Mortenson advised

Virginia Surety of the proposed settlement, but received no comments or

objections.

### B.      Procedural History

On July 21, 2010, Mortenson filed a Complaint against Virginia Surety in

this Court.  On October 29, 2010, Mortenson filed its First Amended Complaint

[Docket No. 16] against Virginia Surety alleging Count One: Declaratory

Judgment: Defense; Count Two: Declaratory Judgment: Indemnity; Count Three:

Breach of Contract: Defense and Indemnity; and Count Four: Breach of Duty of

Good Faith and Fair Dealing.

Mortenson has filed a motion for partial summary judgment, requesting a

ruling that Virginia Surety breached its duty to defend by failing to pay

Mortenson for the defense costs incurred in the Lanigan Suit and that Virginia

Surety must immediately reimburse Mortenson for the $165,146.66 in defense

costs incurred by Mortenson in the Lanigan Suit.  Mortenson further requests

that the Court award Mortenson its attorney fees and costs incurred in bringing

this motion.

Virginia Surety has filed a motion for summary judgment requesting that the Court dismiss this action in its entirety.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, --- F.3d ----, 2011 WL 2610749, at *4 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

### B.   Interpretation of an Insurance Policy

"Interpretation of an insurance policy, and its application to the facts of the case, are questions of law."  Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 406 (Minn. 1998) (citation omitted).  "General contract principles govern the

10

construction of insurance policies, and insurance policies are interpreted to give

effect to the intent of the parties." Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615

N.W.2d 341, 344 (Minn. 2000) (citation omitted).  "Because most insurance

policies are preprinted forms drafted solely by insurance companies—basically

contracts of adhesion—policy words of inclusion will be broadly construed, and

words of exclusion are narrowly considered." Gen. Cas. Co. of Wis. v. Wazniak

Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (citations omitted).  Unambiguous

words are given their "plain, ordinary, and popular meaning." Id. (citation

omitted).  If terms are ambiguous and reasonably susceptible to more than one

interpretation, they will be construed against the insurer and interpreted

liberally in favor of finding coverage.  Id.

### C.    Duty to Defend Standard

"An insurer's duty to defend is distinct from and broader in scope than the

duty to indemnify." Franklin, 574 N.W.2d at 406.

> The duty to defend is broader than the duty to indemnify in three
> ways: (1) the duty to defend extends to every claim that "arguably"
> falls within the scope of coverage; (2) the duty to defend one claim
> creates a duty to defend all claims; and (3) the duty to defend exists
> regardless of the merits of the underlying claims.

<u>Wooddale Builders, Inc. v. Md. Cas. Co.</u>, 722 N.W.2d 283, 302 (Minn. 2006)

(citation omitted).  To avoid the duty to defend, the insurer bears the burden of

demonstrating that all parts of the action clearly fall outside the scope of

coverage.  <u>Franklin</u>, 574 N.W.2d at 407.

### D.     Reservation of Rights Letter

Mortenson argues that, under Minnesota's Unfair Claims Practices Act,

Minn. Stat. § 72A.201, once it tendered the Lanigan Suit defense to Virginia

Surety on November 21, 2007, Virginia Surety was obligated to either accept the

defense (either outright or under a reservation of rights) or deny the claim.

Mortenson also asserts that the ROR Letter did constitute a promise to defend

under a reservation of rights.

Taking the facts in the light most favorable to Virginia Surety, it is clear

that Virginia Surety violated the Unfair Claims Practices Act by failing to

promptly and clearly accept or reject defense.  However, enforcement of

Minnesota's Unfair Claims Practices Act is administrative only – a wronged

insured cannot state a claim for violation of the Act.  <u>See</u> <u>Morris v. Am. Family</u>

<u>Mut. Ins. Co.</u>, 386 N.W.2d 233, 238 (Minn. 1986); <u>Indus. Door Co., Inc. v. Builders</u>

<u>Group</u>, No. A09-2065, 2010 WL 2900312, at *6 (Minn. Ct. App. July 27, 2010).  An

insurer's duty to defend cannot arise from "its failure to timely respond to [the insured's] tender of defense."  Indus. Door Co., Inc., 2010 WL 2900312, at *6. Violation of the Act cannot create estoppel or waiver to broaden the coverage of an insurance policy beyond its terms.  TGA Dev., Inc. v. N. Ins. Co. of N.Y., 62 F.3d 1089, 1091 (8th Cir. 1995); Indus. Door Co., Inc., 2010 WL 2900312, at *6. Therefore, despite Virginia Surety's abominable behavior in responding to Mortenson's tender of defense, the Court turns to the relevant question of whether, under the terms of the Policy, Virginia Surety owed Mortenson a duty to defend the Lanigan Suit.  The Court concludes that it did.

> **E.** **Whether Any of the Lanigan Suit Claims Arguably Fell Within the Scope of the Policy**

> **1.** **Occurrence**

The Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Policy at 1 of 16.)  The Policy "applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.'" (Id.)  "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 14 of 16.)

CASE 0:10-cv-03075-MJD-AJB   Document 51   Filed 08/15/11   Page 14 of 23

Virginia Surety asserts that Lanigan's collapse was not an "occurrence" under the Policy; therefore, the Lanigan Suit claims clearly fell outside of the scope of coverage.  The Court disagrees.

Under Minnesota law, when an "unexpected, unforeseen, or undesigned happening or consequence" is alleged, an "occurrence" exists under a general liability policy.  Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 611 (Minn. 2001) (emphasis omitted). "[W]here there is specific intent to cause injury, conduct is intentional for purposes of an intentional act exclusion, and not accidental for purposes of a coverage provision."  Id. at 612.  "[W]here there is no intent to injure, the incident is an accident, even if the conduct itself was intentional."  Id. "[I]n analyzing whether there was an accident for purposes of coverage, lack of specific intent to injure will be determinative, just as it is in an intentional act exclusion analysis."  Id. (footnote omitted).

> [T]he inference of intent to injure as a matter of law arises when the insured acted in a calculated and remorseless manner or when the insured's actions were such that the insured knew or should have known that a harm was substantially certain to result from the insured's conduct.  The mere fact that the harm was a natural and probable consequence of the insured's actions is not enough to infer intent to injure.

Id. at 613 (citations omitted).  The inference exists in cases in which the insured "acted with deliberate and calculated indifference to the risk of injury," such as by sexually molesting minor foster children or firing "a high-powered rifle loaded with armor-piercing bullets . . . at a guard's truck, which [the insured] knew was occupied."  Id. at 614.

There is no allegation of a specific intent to injure in the Lanigan Suit, apart from the allegation of intentional infliction of emotional distress found within the intentional infliction of emotional distress count.  Nothing in the Lanigan Suit allegations rises to the level where an inference of intent to injure can be inferred as a matter of law.  Lanigan alleged that he carried a "written request[] from his doctor that he be allowed to wear shorts on his construction jobs in warm weather.  Numerous general contractors routinely comply with his requests." (Lanigan Compl. ¶ 6; Am. Lanigan Compl. ¶ 4.)  There is no allegation of a medical "order" precluding Lanigan from wearing long pants at work; rather, there was a request that he be allowed to wear shorts that had been agreed to by other general contractors in the past.  The Lanigan Suit also alleges that Lanigan told Mortenson that, if he could not wear short pants, "this would put him in jeopardy of medical damage."  (Lanigan Compl. ¶ 9; Am. Lanigan Compl. ¶ 7.)

There is no allegation in the Lanigan Suit that Mortenson had experience with

similar issues in the past, with Lanigan or anyone else, or had any further

knowledge of Lanigan's condition.  According to the Lanigan Suit, he suddenly

fell ill after a few hours the first day he wore long pants.  Mortenson's alleged

acts of failing to heed a vague warning from Lanigan, and, instead, following

federally promulgated safety standards requiring long pants, are not clear

evidence that Mortenson acted in a calculated or remorseless manner or that

Mortenson knew or should have known that harm was <u>substantially</u> <u>certain</u> to

result.  <u>See</u> <u>Am. Family Ins Co.</u>, 628 N.W.2d at 613-14 (contrasting intentionally

pushing woman, causing injury, and striking baggage clerk after tug-of-war over

luggage, both of which did not permit an inference of an intent to injure, with

shooting at a guard's truck with a high-powered rifle loaded with armor-piercing

bullets, knowing that the truck was occupied, and sexually molesting minor

foster children while knowing that the welfare department viewed sexual contact

as detrimental and having been accused of assaulting children in the past, which

did create an inference of an intent to injure).  <u>Cf.</u> <u>Diocese of Winona v. Interstate</u>

<u>Fire & Cas. Co.</u>, 89 F.3d 1386, 1395 (8th Cir. 1996) (holding that the Archdiocese

"expected" a particular priest to abuse the plaintiff when it had previously

"received numerous reports of abuse by [the priest];" "knew he fondled a boy in the whirlpool;" "knew [he] had young boys spend the night;" knew that he "engaged in a kind of world that centers on young boys and some late night going out and having visitors in;" "knew that . . . [he] had previously been in treatment for a 'longstanding' and 'reoccurring' problem, and knew . . . that previous treatments . . . had not been effective;" and yet placed the priest in a new parish with access to children and without adequate supervision).  There is no allegation that Mortenson had a desire to physically harm Lanigan simply because it did not grant his request to wear shorts on the Project.  Nor do the allegations in the Lanigan Suit give rise to an inference of an intent to injure.

### 2.     Intentional Act Exclusion

The intentional act exclusion for expected or intended injury does not apply for the same reason that argues that an "occurrence" did occur:

> [F]or the intentional-act exclusion to apply, we look to whether the insured specifically intended to cause injury.  . . .  Not surprisingly, we have stated that [t]he questions of whether an injury is the result of an accident and whether coverage is excluded because the injury is the result of an intentional act are for all practical purposes, identical issues.

RAM Mut. Ins. Co. v. Meyer, 768 N.W.2d 399, 404-05 (Minn. Ct. App. 2009) (citation omitted).

### 3.   Whether the Specific Counts in the Lanigan Suit Are Covered by Virginia Surety's Policy

Virginia Surety submits arguments why each particular count in the Lanigan Suit, except the negligence count, is allegedly not covered by the Policy. Regardless of whether the discrimination, intentional infliction of emotional distress, or breach of contract counts arguably fall within the scope of coverage, the fact that one count, the negligence count, clearly falls within the scope of coverage is sufficient to establish Virginia Surety's duty to defend.

### 4.   Employer-Employee Relationship

Virginia Surety argues that the claims made by Lanigan were for recovery based on an employer-employee relationship, and that such claims are not entitled to coverage under the Policy.  Virginia Surety acknowledges that Mortenson was not Lanigan's employer, but claims that its coverage decision is based solely on the allegations in Lanigan's Complaint, despite its knowledge of the fact that there was no such relationship.

First, under established insurance law, Virginia Surety cannot ignore the fact that, despite the claim in Lanigan's complaint, it knew Mortenson was not Lanigan's employer.  See Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254,

18

258 (Minn. 1993) (citations omitted).  Mortenson advised Virginia Surety that it was not Lanigan's employer as soon as it received the ROR Letter.

Second, even though the existence of an employee-employer relationship can be argued to be critical to the validity of the discrimination claim, it is not critical to the validity of the negligence claim.

### 5.   "Your Work" Provision

Under Minnesota law, subcontractors can agree to indemnify a contractor's negligence where the subcontractor "agree[s] to provide specific insurance coverage for the benefit of others."  Van Vickle v. C. W. Scheurer & Sons, Inc., 556 N.W.2d 238, 241 (Minn. Ct. App. 1996) (citing Minn. Stat. § 337.05, subd. 1).  Virginia Surety's citation to National Hydro Systems v. M.A. Mortenson Co., 529 N.W.2d 690, 694 (Minn. 1995), is inapposite.

Virginia Surety notes that the Policy contains an additional insured provision that states that an insured "is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you."  (Policy, Additional Insured at 1 of 1.)  This provision is consistent with the Harbour Subcontract's requirements.

Virginia Surety concludes that it only has a duty to defend and indemnify Mortenson against claims which arise out of or result from Harbour's work.  It argues that the Lanigan Suit alleges that it was Mortenson's own action of directing Lanigan to wear long pants that resulted in his claimed injuries.  There is no allegation that Harbour instructed Lanigan to wear long pants.  Virginia Surety reasons that, here, the injury to Lanigan did not result from any work that Harbour performed; therefore, there is no coverage.

The Court rejects Virginia Surety's argument.  Coverage does not "necessarily depend on proof of any negligence or even causation on [the contractor's] part;" however, the "policy does require a nexus between the injury and [the contractor's] work." Cont'l Cas. Co. v. Auto-Owners Inc. Co., 238 F.3d 941, 944 (8th Cir. 2001).  Lanigan was on the work site as an employee of WHM, which was a subcontractor hired by Harbour to complete Harbour's work for Mortenson.  When Harbour hired WHM to do plumbing work, the work resulted in the Lanigan Suit against Mortenson arising out of Harbour's work, which was done for Harbour by WHM.  But for Harbour hiring WHM, which hired and supervised Lanigan and which reported directly to Harbour, Mortenson would not have been sued by Lanigan.  The nexus requirement has been met.

### F.    Legal Fees Incurred by Mortenson in This Action

The Court concludes that Virginia Surety had a duty to defend Mortenson,

which it breached.  Mortenson is entitled to its costs and attorneys' fees

expended in obtaining that declaration.

> Under Minnesota's common law, each party bears [its] own
> attorney fees in the absence of a statutory or contractual exception.
> However, in the insurance context, we have carved out a narrow
> exception to the general rule: attorney fees are recoverable when an
> insurer breaches its duty to defend.

In re Silicone Implant Ins. Coverage Litig., 667 N.W.2d 405, 422 (Minn. 2003)

(citations omitted).  "When a breach of the duty to defend occurs, the insured is

entitled to be reimbursed for attorneys fees and costs expended to force the

insurer to pay for the defense." Chicago Title Ins. Co. v. Fed. Deposit Ins. Corp.,

172 F.3d 601, 606 (8th Cir. 1999) (quoting Indep. Sch. Dist. No. 697 v. St. Paul Fire

& Marine Ins. Co., 515 N.W.2d 576, 581 (Minn. 1994)).  Here, Mortenson was

required to bring this declaratory judgment action and motion for partial

summary judgment in order to force Virginia Surety to fulfill its obligation to

pay for Mortenson's defense of the Lanigan Suit.  The Court holds that Virginia

Surety must pay Mortenson's fees and costs incurred to establish Virginia

Surety's liability for the Lanigan defense.

### G.     Parties' Duties with Regard to Settlement

Virginia Surety asserts that it never consented to the settlement that

Mortenson entered into with Lanigan.  Therefore, it concludes that it cannot be

liable to indemnify Mortenson and pay the settlement amount.

Mortenson attempted to communicate with Virginia Surety throughout the

litigation.  It informed Virginia Surety of the settlement conference before it

occurred and provided the proposed settlement to Virginia Surety for comment;

in both cases, it received no response.  If the insurer breaches the duty to defend,

then the insured is entitled to settle the claim for a reasonable, good faith

settlement without notice to the insurer.  Brownsdale Co-op Ass'n v. Home Ins.

Co., 473 N.W.2d 339, 341-42 (Minn. Ct. App. 1991).  Therefore, in this case,

Mortenson had authority to settle the Lanigan Suit without Virginia Surety's

explicit approval for a reasonable, good faith settlement.  Virginia Surety's

motion for summary judgment on the indemnity count is denied.  Mortenson has

not moved for summary judgment on this claim.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.   M.A. Mortenson's Motion for Partial Summary Judgment on Breach of the Duty to Defend by Virginia Surety Company [Docket No. 20] is **GRANTED**.

2.   Virginia Surety is ordered to pay $165,146.66 to Mortenson, comprising Mortenson's fees and costs incurred in defending the underlying litigation.

3.   Virginia Surety is ordered to pay Mortenson's reasonable attorneys' fees incurred in recovering its defense costs in this action. Mortenson's shall file its evidence of the amount of those fees within 30 days from the date of this Order.  Virginia Surety's objections, if any, to the amount of the request shall be filed within 30 days from the date of Mortenson's filing.

4.   Virginia Surety's Motion for Summary Judgment Against M.A. Mortenson [Docket No. 28] is **DENIED**.

Dated:   August 15, 2011          s/ Michael J. Davis_____
                                  Michael J. Davis
                                  Chief Judge
                                  United States District Court